# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **WILLIAM TODD PITTMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 2:14-cv-959-MHT-PWG** |
| | ) |
| **STATE FARM FIRE AND** | ) |
| **CASUALTY INSURANCE** | ) |
| **COMPANY, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff filed his complaint on September 15, 2014.  (Doc. 1).  The complaint

was amended on November 11, 2014.  (Doc. 33).  On January 5, 2015, Defendants

State Farm Fire and Casualty Insurance Company ("State Farm") and Pat Craig

moved to dismiss this action, asserting grounds against each of Plaintiff's claims.

(Doc. 55).  On January 23, 2015, two additional motions to dismiss were filed, the

first filed by Defendant Eugene Campbell (Doc. 60), the second by Defendants Bert

S. Nettles, C. Dennis Hughes, Felicia A. Long, Haskell Slaughter Young & Redicker,

LLC, and Haskell Slaughter Young & Gallion, LLC[1], who refer to themselves

collectively as "the Lawyer Defendants" and will be collectively referred to as such

---

[1]  Defendants Haskell Slaughter Young & Redicker, LLC and Haskell Slaughter Young &
Gallion, LLC have since been voluntarily dismissed as Defendants in this action under Fed. R. Civ.
P. 41.  (Docs. 75, 79).

in this Report and Recommendation (Doc. 62). Because the arguments in these motions are similar, they are considered together.

On November 25, 2014, Judge Myron Thompson referred the matter to the Magistrate Judge for consideration and recommendation. (Doc. 43). *See also* 28 U.S.C. § 636(b); Rule 72, F.R.Civ.P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jefferey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## I.   JURISDICTION

This court has jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331.[2] Plaintiff brings claims under the U.S. Constitution through 42 U.S.C. § 1983. (Doc. 33). This court also has supplemental jurisdiction over Plaintiff's state law claims under 42 U.S.C. § 1367. Jurisdiction is proper in this court.

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally,

---

[2] Plaintiff incorrectly cites 28 U.S.C. § 1332 as the basis for jurisdiction. Because the parties are not diverse and Plaintiff does not allege the citizenship of several Defendants (Doc. 33), jurisdiction is only proper under 28 U.S.C. § 1331.

"[e]xhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6) purposes. *Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F.App'x 994, 995 (11th Cir. 2012). *Accord Berry v. Keller*, 157 F. App'x 227, 228 (11th Cir. 2005) ("Documents attached to the complaint are treated as part of the allegations." (citation omitted)). Considering these exhibits does not require a Rule 12(b)(6) motion to dismiss to be converted to a Rule 56 motion for summary judgement. *See id.* Only when "matters outside the pleadings are presented by the parties and district court" must the motion be converted. *Id.* (quoting *Speaker v. U.S. Dep't of Health and Human Servs. Ctr. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to

dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## III.   RELEVANT FACTUAL BACKGROUND

On July 4, 2010, Todd Pittman and his family returned from vacation to find some items missing from their home. (Doc. 33 at ¶ 15).  Pittman reported the incident to the police and to their home insurance company, State Farm.  (*Id.* at ¶¶ 16, 26).  The items reported missing were valued at approximately $500,000.  (*Id.* at ¶ 21).  According to the complaint, Pittman's claim appeared immediately to be suspicious to State Farm (*Id.* at ¶¶ 28-33) and eventually State Farm concluded that Pittman had fraudulently reported the items as stolen and denied his claim[3].  (*Id.* at ¶ 39).

Shortly before receiving the denial from State Farm, Pittman and his then-wife

---

[3]  The evidence cited in support of this statement in the complaint does not state that State Farm actually denied Pittman's claim. (Doc. 33-7).  Rather, it advises him that there are "questions" regarding misrepresentations and other issues surrounding the claimed loss.  (*Id.*)  It also quotes sections from the insurance policy about insurance fraud.  (*Id.*)  There is no other exhibit to the complaint that purports to be a formal denial of Pittman's claim.  Nonetheless, for the purposes of the motions to dismiss, the court assumes, without deciding, that there was a formal denial of the claim, although the cited evidence seemingly contradicts this statement.

sued State Farm for bad faith and breach of contract.  (*Id.* at ¶ 38).  The case was resolved in favor of State Farm, *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335 (M.D. Ala. 2012), and an appeal of the decision was upheld by the Eleventh Circuit, *Pittman v. State Farm Fire & Cas. Co.*, 519 F.App'x 656 (11th Cir. 2013). (Doc. 33 at ¶¶ 40-41).

At some point, Defendant Pat Craig, who investigated the claim on behalf of State Farm, met with Pittman's former paramour, Defendant Teresa Spence.  (*Id.* at ¶¶ 43, 46).  According to the complaint, Spence told Craig that "she had come into possession" of some of missing items and also accused Pittman of selling drugs and unrelated nefarious acts.[4]  (*Id.* at ¶¶ 43, 45).  Pittman also alleges that Pat Craig recorded the meeting with Spence but did not produce the recording in the course of the prior litigation.[5]  (*Id.* at ¶ 50).  Plaintiff contends that, after the meeting, State Farm and Pat Craig agreed not to prosecute Teresa Spence in return for her agreement to "blame the burglary on Todd Pittman and cooperate[] in State Farm's prosecution

---

[4]  Pittman also alleges that Spence made similar accusations to other law enforcement agencies as well.  (Doc. 33 at ¶ 85).

[5]The complaint does not reflect whether Defendants claimed this recording was privileged and withheld it for that reason nor whether the issue was ever brought before the court in a motion to compel.  Therefore, the undersigned assumes no position on whether the recording *should* have been turned over in the course of the prior litigation.

of Todd Pittman."[6]  (*Id.* at ¶ 44).   The complaint alleges that neither State Farm, the Lawyer Defendants, nor Pat Craig provided this information to law enforcement or the court during trial.  (*Id.* at ¶¶ 56, 58).

Pittman avers that State Farm, the Lawyer Defendants, and Pat Craig introduced Teresa Spence to Defendant Campbell.  (Doc. 33 at ¶ 60).  After speaking with Teresa Spence, Campbell executed an affidavit in support of a search warrant in which he related the location of the storage unit where some of the missing items were eventually found as well at the name under which the unit was registered.[7]  (*Id.* at ¶¶ 63-64, Doc. 33-18).   The complaint alleges that the affidavit contained information related to Campbell from Defendant Felicia Long and the father of Pittman's then-girlfriend, Heather Ledbetter.  (Doc. 33-18, Doc. 33 at ¶¶ 140-143). The information from Ms. Ledbetter and her father is traced back in the complaint to Defendant Spence.  (Doc. 33 at ¶ 150).  Plaintiff asserts that Spence's purpose in making the disclosure to both Ms. Ledbetter and Campbell was to generate probable cause for the search warrant.  (*Id.* at ¶ 151).

------

[6]  This statement is also only partially supported by the evidence cited by the complaint. Because the matter before the court is a motion to dismiss, the court credits the statements in the complaint if they are more favorable to Plaintiff, even where the attached evidence calls those statements into question.

[7]  The unit was registered under an alias and the payment of rent and submission of registration took place through a drop box so that the owners of the unit are unable to verify the identify of the person who rented it.  (Doc. 33 at ¶¶ 205-208).

7

A search warrant was issued for a storage unit as a result of the affidavit.  (*Id.* at ¶ 64).  Many of the items reported stolen were found in the storage unit.  (*Id.*).  The complaint avers that Defendant Craig was present at the search and identified several of the missing items.  (*Id.* at ¶ 153 and p. 16 n.66).  Additional items belonging to Plaintiff were found alongside the missing items in the storage unit.  (*Id.* at ¶ 154).

After the search of the storage unit, an arrest warrant was issued for Pittman. (Doc. 33 at ¶ 156).  Pittman was arrested in Okaloosa County, Florida.  (*Id.* at ¶ 157). The complaint claims that before and after the arrest, Campbell was in contact with the arresting officer.  (*Id.* at ¶¶ 158-160, 163).  At the time of his arrest, Plaintiff contends that he had already made plans to appear in court to contest the charge.[8]  (*Id.* at ¶ 166).  If he was aware of this fact, Campbell did not share it with the arresting officer in Florida.  (*Id.* at ¶ 167).  Pittman also asserts that Campbell also represented to the Court in Geneva County, Alabama, after the arrest that Plaintiff was a flight risk and his bond was raised as a result.  (*Id.* at ¶¶ 169-170).

The criminal case against Plaintiff ended in a joint dismissal.  (Doc. 33 at ¶¶ 96-97, Doc. 33-59).  Throughout the case and investigation leading up to it, the case

---

[8]  This allegation may be an attempt to state a constitutional deprivation.  If so, it fails to do so.  No constitutional right is violated merely because a defendant is denied an opportunity to self-surrender on a valid existing arrest warrant.  *See Crowell v. Alamo Cmty. Coll. Dist.*, No. SA-03-CA-0686 RF (NN), 2006 WL 2769947 at *17 (W.D. Tex. Sept. 25, 2006).

was publicized and Plaintiff was named as a defendant or suspect.  (Doc. 33 at ¶¶ 244-245).   Information concerning the case appeared in radio and television broadcasts, on the internet, and in print media.  (*Id.* at ¶¶ 165, 245).  According to the complaint, the original source of the information publicized by the media was one of the Defendants, though Mr. Pittman does not specify which Defendant.  (*Id.* at ¶ 164).

Plaintiff claims that, at some point, Defendants Spence and Campbell began a personal relationship.[9]  (*Id.* at ¶¶ 96, 122).   Additionally, there are numerous allegations relating to what information various Defendants knew but, again, the chronology of these allegations is not clear.[10]  For example, it is alleged that Spence gave testimony in a deposition that was contradictory to what she reported to Pat Craig in their meeting.  (*Id.* at ¶ 49).  Defendants Craig, State Farm, and the Lawyer Defendants are each alleged to have known of this fact.  (*Id.* at ¶ 196).  Spence also allegedly admitted to being in possession of Plaintiff's stolen property after the burglary (Doc. 33 at ¶ 90) and Defendants Campbell, Craig, State Farm, and the Lawyer Defendants are each alleged to have known of this admission.  (*Id.* at ¶ 195).

---

[9] This statement is also contradicted by portions of the evidence cited as supporting it.  (*See*, *e.g.*, Doc. 33-38).  Additional evidence cited in support is inadmissible hearsay.  (*See*, *e.g.*, Doc. 33-36).

[10] Because a conspiracy is a requirement of a § 1983 against most of the Defendants, "[t]hese bare assertions... amount to nothing more than a 'formulaic recitation of the elements...'  As such, the allegations are conclusory and not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681.

Finally, although he does not allege *when* each Defendant knew, Plaintiff asserts that Defendants Craig, State Farm, and the Lawyer Defendants each knew at some point that Spence had confesses involvement in the crime. (*Id.* at ¶ 197).

## IV.   DISCUSSION

Plaintiff has raised three federal claims: violation of the Fourth Amendment, violation of the Fifth Amendment, and Malicious Prosecution. (Doc. 33). For the reasons discussed below, Plaintiff's federal claims are due to be dismissed with prejudice and his state law claims are due to be dismissed without prejudice and with leave to refile in state court.

### A.   Section 1983 Claims Against Private Actors

Defendants State Farm, Pat Craig, and the Lawyer Defendants assert that they cannot be held liable for Plaintiff's § 1983 claims because they are private citizens and not state actors. (Doc. 55 at pp. 12-18, Doc. 62 at pp. 10-17). An unwaivable requirement of a viable § 1983 claim is evidence that the defendant was acting "under color of state law." *Pugh v. Horace*, No. 13-589-CG-M, 2014 WL 912000 at *3 (S.D. Ala. Feb. 10, 2014). "The law is clear that 'the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Id.* Instead, "[f]or a defendant's actions to be under color of state law, such conduct must be 'fairly attributable to the State,' which in turn requires that 'the

party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). This "'state actor' determination must be made on a case-by-case basis'" and such a finding is rare. *Id.* (citation omitted). *Accord McDaniel v. Smith*, No. CV 507-079, 2009 WL 3151196 at *8 (S.D. Ga. Sept. 30, 2009) (citing *Harvey*, 949 F.2d at 1130)).

A private actor may be deemed a state actor only when one of three tests is satisfied:

> (a) a "state compulsion test," wherein the state has coerced or significantly encouraged the violative conduct; (b) a "public function test," wherein private parties perform a public function that is traditionally the exclusive prerogative of the state; and (c) a "nexus/joint action test," wherein the state is in a position of interdependence with the private party, such that the state and private actor are essentially joint participants in an enterprise.

*Hill v. Lee County Sheriff's Office*, No. 2:11-cv-242-FtM-29SPC, 2012 WL 4356818 at *6 (M.D. Fla. Sept. 24, 2012) (citing *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)). *See also Pugh*, 2014 WL 912000 at * 3, *Hill v. Lee Cnty. Sheriff's Office*, No. 2:11-cv-242-FtM-29SPC, 2012 WL 4356818 at * 6 (M.D. Fla. Sept. 24, 2012).

Reading the complaint in the light most favorable to Pittman, the only test applicable to the facts as alleged is the "nexus/joint action test."[11]  "This joint-engagement theory of § 1983 liability is sometimes called a theory of § 1983

---

[11]  Plaintiff concedes that this is the correct test.  (Doc. 73 at p. 12).

'conspiracy.'" *McDaniel v. Smith*, No. CV 507-079, 2009 WL 3151196 at *8 (S.D.

Ga. Sept. 30, 2009) (citing *Harvey*, 949 F.2d at 1133). Plaintiff, through the amended

complaint, attempts to allege a conspiracy to deprive him of his constitutional rights.

(Doc. 33). "Conspiring to violate another person's constitutional rights violates

section 1983." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir.

2002) (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), *Strength v. Hubert*, 854 F.2d

421, 425 (11th Cir. 1988)). In other words, "where a private party is 'jointly

engaged' with government officials in the challenged action, that private party may

be considered a state actor and may be liable under § 1983." *McDaniel*, 2009 WL

3151196 at *8 (citing *Dennis v. Sparks*, 449 U.S. 24, 28 (1980), *Lugar*, 457 U.S. at

931, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

> To establish a prima facie case of section 1983 conspiracy, a plaintiff
> must show, among other things, that the defendants 'reached an
> understanding to violate [his] rights.' The plaintiff does not have to
> produce a 'smoking gun' to establish the 'understanding' or 'willful
> participation' required to show a conspiracy, but must show some
> evidence of agreement between the defendants.

*Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002) (internal

citations omitted). Merely establishing that a defendant "'called upon' official

authority" is insufficient to make a showing of conspiracy. *McDaniel*, 2009 WL

3151196 at *9. Instead, "a plaintiff must demonstrate that the parties 'reached an

understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.'" *Hill*, 2012 WL 4356818 at *6 (citing *Shell v. U.S. Dep't of Housing and Urban Dev.*, 355 F.App'x 300, 307 (11th Cir. 2009)) (alteration in original). *Accord McDaniel*, 2009 WL 3151196 at *9.

However, a showing of conspiracy requires more than the conclusory allegations and a "mere scintilla" of factual evidence. *Id.* at 1284 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). "A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984); *Hundley v. Daniels*, No. Civ. A. 205CV502DWO, 2005 WL 1389878 at *2 (M.D. Ala. June 10, 2005). "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Hill*, 2012 WL 4356818 at *6 (quoting *Fullman*, 739 F.2d 557). *Accord Hundley*, 2005 WL 1389878 at *2. It is also not enough to include "a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed.). *Accord Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) ("A plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists. Vague and conclusory

13

allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss." (citations omitted)).   Plaintiff's claims must include enough factual evidence to exclude the possibility of legal action on the part of Defendants. *Twombly*, 550 U.S. at 554.  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" when those allegations are assumed to be true for the purposes of a motion to dismiss.  *Id.* at 555.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' - 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The complaint is assessed with these fundamental principles in mind. Although lengthy at 304 paragraphs, the complaint contains significant irrelevant background information and cryptic asides with the factual allegations said to support Plaintiff's claims buried within the other information.  "The complaint at issue in this case is the proverbial shotgun pleading. Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d. 1273, 1279 (11th Cir. 2006) (citing *Magluta v. Samples*, 256 F.3d. 1282, 1284 (11th Cir. 2001) (per curiam)).  Alternatively, a shotgun pleading may be one in which the plaintiff "in *one* count... present[s] multiple claims for relief, supporting them with a rambling set

of factual allegations that may or may not be relevant to each claim.  *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1284 (11th Cir. 2000) (quoting *Oladeinde v. City of Birmingham*, No. 91-2063 (11th Cir. May 8, 1991)).   In short, "a 'shotgun pleading' is one in which '"it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'"   *Marshall v. Aryan Unlimited Staffing Solution/ Faneuil Inc./ Mac Andrews Holding, Faneuil Inc./ Mac Andrews & Forbs Holding*, — F. App'x —, 2015 WL 163036 at *2 (11th Cir. Jan. 14, 205) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir.1996)).  Put another way, "[t]he failure to identify which allegations of fact are intended to support which claims for relief with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"  *Edward v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 888, 891, (11th Cir. 2013) (citing *Anderson*, 77 F.3d at 366).   The is precisely the type of pleading Pittman has submitted.   The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed] for years" shotgun pleadings, such as Plaintiff's complaint.[12]  *Davis v.*

---

[12]   The reasons for condemnation are legion.  They "wreak havoc on the judicial system." *Wagner*, 464 F.3d at 1279 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001)).  They "inexorably broaden[] the scope of discovery."  *Davis*, 516 F.3d at 981.  They "lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard." *Id.* at 982.  They "wreak havoc on the appellate court dockets."  *Id.*  At times, they may even "undercut the purpose of Congress's enactment of [certain laws]." *Id.* at 983.  And ultimately, "the mischief shotgun pleadings causes undermines the public's respect for the courts - the ability of the courts to process efficiently, economically, and fairly the business placed before them."  *Id.*

15

*Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008).

When Pittman's complaint is distilled to those paragraphs that support elements of the § 1983 claims, it becomes clear that there are insufficient allegations to support the conspiracy necessary to hold State Farm, Pat Craig, and the Lawyer Defendants liable for a § 1983 violation.  As controlling authority makes clear, the complaint must demonstrate an *agreement* between the private actors and the state actors to violate a plaintiff's constitutional rights.  When Pittman's allegations are taken as true - regardless of whether the court finds them to be likely[13] - there is no plausible allegation of an agreement, which in turn is the linchpin of the cause of action.  There are factual allegations that establish an understanding between the private actors, but this is not enough.  For example, the complaint alleges that Pat Craig and State farm entered into an agreement with Teresa Spence not to prosecute her if she blamed Plaintiff for the burglary of his home.  (Doc. 33 at ¶ 44).  Similarly, the complaint alleges that "State Farm, its lawyers and Pat Craig began working with the active assistance of Teresa Spence to criminally prosecute" Plaintiff and that the same Defendants introduced her to Defendant Campbell.  (*Id.* at ¶¶ 60-61, 228).  None of

---

[13]  Certainly, not all of the factual allegations are creditable.  In fact, some of the evidence attached to the complaint and cited as supporting a particular paragraph actually creates an internal contradiction in the complaint.  However, for the purposes of the motions to dismiss, the court takes the most favorable (to the Plaintiff) of the incongruent contentions as true.

these allegations indicates that any of the private actors entered into an agreement with a state actor rather than with each other to deprive Plaintiff of his constitutional rights.  While such a conspiracy between the private actors - if proven - may be reprehensible, it is not actionable under § 1983.

Even as to the allegations against Defendant Teresa Spence[14] - who seems to be the fulcrum in the conspiracy claims - the complaint fails to allege an agreement between her and any state actor.  Instead, it only alleges that she "was involved with [Defendant] Campbell" and that "she [was] using Campbell" in order to obtain Plaintiff's property that was later recovered.  (*Id.* at ¶¶ 98, 227).  These allegations likewise do not raise an actionable claim.  At most, the allegations imply that Defendant Spence attempted to manipulate Defendant Campbell into proceeding with his investigation of Plaintiff in a way of which she approved, which does not amount to an agreement or a conspiracy.

The complaint does, however, allege that

> Either State Farm, its lawyers and Craig agreed with Spence not to disclose the fact of Spence's involvement in the crime to Campbell and other law enforcement to gain law enforcement's help in prosecuting Pittman or; Spence and Campbell did not disclose to State Farm, its lawyers and Craig that they were aware of Spence's involvement in the crime; or all the defendants' understood Spence's involvement in the

---

[14]  Defendant Spence has not filed a motion to dismiss in this case.  However, her legal position is not materially different from the other private actor Defendants in this case.

crime and agreed to prosecute Pittman for the crime anyway.

(*Id.* at ¶ 256).  While pleading in the alternative is permissible (Fed. R. Civ. P. 8(d)(2)), the stated alternatives are precisely the type of conclusory allegations that cannot satisfy the pleading standard of Rule 8.  Furthermore, in two of the three alternative theories, some or all of the private actor-Defendants are not alleged to have reached an agreement with Defendant Campbell, the lone state actor-Defendant in this case.  Based on this paragraph alone, it is not more likely that there was an agreement between the private actors and state actors than that there was not.  The allegations do nothing to exclude the possibility that the conduct is not recoverable under § 1983, nor does it "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The allegations against State Farm bear additional analysis.  In the Eleventh Circuit, a corporation "may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, [but] such a corporation may not be held liable under § 1983 on the basis of *respondeat superior*." *Allah v. Gurley*, Nos. 2:12–cv–255–WHA, 2:12–cv–915–WH, 2015 WL 1311735 at \*5 (M.D. Ala. March 24, 2015) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992), *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1986), and *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)).  *Accord Massey v. Quality*

*Correctional Healthcare, Inc.*, Nos. 2:12cv–101–WHA, 2:12cv–526–WHA, 2015 WL 852054 at *6 (M.D. Ala. Feb. 26, 2015) (citing same cases).  Plaintiff's complaint is devoid of any allegations of a "policy or custom" of State Farm to deprive its policyholders of their constitutional rights.  Similarly, there are no allegations that it is State Farm's "policy or custom" even to deny claims such at Plaintiff's or to pursue criminal prosecution in cases such as his.  Thus, in addition to the reasons described above, the claims against State Farm are insufficient to establish liability under § 1983.

Plaintiff makes two additional arguments in his various submissions worth noting.[15]  First, he argues that State Farm, Pat Craig, and the Lawyer Defendants were part of a "symbiotic relationship" with Defendant Campbell.  (Doc. 73 at p. 12).  However, this allegation is nothing more than a conclusory statement providing no more factual basis for a conspiracy than does Plaintiff's blanket assertion that a conspiracy existed.  Similarly, he alleges that "these parties knew of the wrongfulness of their actions and the fabricated nature of the claims" (*Id.*), but this averment does not demonstrate that there was any agreement between the parties.  Accepted as true, the statement alleges only that each Defendant individually "knew of the

---

[15]  To the extent that Plaintiff has alleged that Defendant Long is a state actor because she is an "officer of the court" as an attorney (Doc. 62 at pp. 11-12), he has explicitly disclaimed that argument (Doc. 73 at p. 9).  Accordingly, the argument will not be addressed here.

wrongfulness of their actions" and at some undetermined point in time knew "of the fabricated nature of the claims."[16]

Second, Plaintiff relies heavily on *Dennis v. Sparks*, 449 U.S. 24 (1980).[17] Despite Plaintiff's insistence, this case does not change the analysis described above. Instead, the case stands only for the proposition that private actors may be held liable for conspiring with a state actor to violate § 1983 even when the state actor involved is immune. *Id.* at 28. The *Dennis* Court merely found that the private parties may be liable when there is evidence that they had conspired unlawfully with a judge in order to get a favorable ruling. *Id.* at 29, 32. The judge may be immune from suit but the Court concluded that the private parties were subject to § 1983 liability. The holding is distinct from the facts presented here, where the evidence points to the possibility, at most, of a conspiracy among the private actors. Unlike *Dennis*, there is no evidence to sustain an inference that the private actors conspired with state actors.

Accordingly, the § 1983 claims against State Farm, Pat Craig, and the Lawyers Defendants are due to be dismissed because the complaint does not demonstrate that the actions alleged were taken "under color of state law." Because Defendant

---

[16] From the omnidirectional nature of the complaint, it is not readily apparent even to which claims the Plaintiff has referred.

[17] In addition to *Dennis v. Sparks*, the parties cite several other cases. While the parties spend several pages arguing over their relative significance, these cases add nothing new to the discussion and will not be discussed further.

Spence[18] is not in a materially different situation than the other private actor Defendants, the claims against her are due to be dismissed against her as well.

### B.      Qualified Immunity as to Defendant Campbell

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lawrence v. City of Fairhope, Ala.*, 429 F.App'x 900, 902 (11th Cir. 2011) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting in turn *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  The Supreme Court has held that the doctrine of "[q]ualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity protects public officials from broad-ranging discovery disruptive to effective government, *see id*. at 818, and operates as a shield against civil damages due to mistaken judgments.  *See Malley v. Briggs*, 475 U.S. 335, 343 (1986); *Butz v.*

---

[18]    Defendant Spence has not filed a motion to dismiss.  However, as discussed in this Recommendation, the allegations against her, although closer, do not rise to the level necessary to survive dismissal any more than those against the other private actor Defendants.  Her posture cannot be distinguished from that of her codefendants.

*Economou*, 438 U.S. 478, 507 (1978) ("[Public] officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

Qualified immunity is "an immunity from suit rather than a mere defense to liability...." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Indeed, the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 (1987). Accordingly, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).

The qualified immunity analysis utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless h[is] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Invs., Inc. v. County of Escambia, Fla*., 132 F.3d 1359, 1366 (11th Cir. 1998). "We generally accord ... official conduct a presumption of legitimacy." *United States Dep't of State v. Ray,* 502 U.S. 164, 179 (1991). The qualified immunity entitlement will fail only "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional

rights of the [plaintiff].'" *Harlow*, 457 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (emphasis omitted). Qualified immunity "represents the norm" for government officials exercising discretionary authority. *Id*. at 807. Indeed, as the qualified immunity defense has evolved, it provides ample protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

Under qualified immunity, an officer is protected from suit when he makes a reasonable mistake of law or fact. *See Pearson*, 555 U.S. at 231. *See also Messerschmidt v. Millender*, --- U.S. ----, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012) ("[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks and citations omitted)). If an officer's error is entitled to the protection of qualified immunity, such protection "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation marks and citations omitted). Indeed, as the Eleventh Circuit has stated, "the salient question ... is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Holloman ex rel. Holloman v. Harland,* 370 F.3d

1252, 1278 (11th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The outcome of an assertion of qualified immunity depends in large measure on whether (1) the law allegedly violated was clearly established at the time of the conduct complained about, and (2) if it was, whether the official's conduct was objectively reasonable in light of the information known to the official at the time. *See Creighton*, 483 U.S. at 641. These are both objective and fact-specific inquiries and while the court addresses them as questions of law, *Mitchell*, 472 U.S. at 526–28, 528 n. 9, it does so by viewing the record through the eyes of an objective, reasonable governmental official. *Nicholson v. Ga. Dep't of Human Resources*, 918 F.2d 145, 147 (11th Cir. 1990). To determine whether an officer's actions were objectively reasonable, the court looks at the information known to him, viewed in a light most favorable to the plaintiff. *Swint v. City of Wadley*, 5 F.3d 1435, 1438 (11th Cir. 1993), *modified on reh'g on others grounds*, 11 F.3d 1030 (11th Cir. 1994).

Once a defendant has raised the defense of qualified immunity and has shown that his actions were within the scope of discretionary authority, then the plaintiff has the burden to overcome the defense. *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988). More specifically, the Eleventh Circuit recognizes a two-part analysis for qualified immunity claims. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly

wrongful acts occurred." *Id.*  Second, once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part.  This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law." *Id.* (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)) (other citations omitted).  Furthermore, there is a temporal requirement related to this inquiry—a plaintiff must show that a reasonable public officer would not have believed his actions to be lawful in light of law that was clearly established at the time of the purported violation.  *See Creighton*, 483 U.S. at 641; *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

It is clear that executing an affidavit and seeking warrants are within Defendant Campbell's discretionary authority as a deputy sheriff.  *Pair v. City of Parker FL Police Dep't*, 383 F. App'x 835, 839 (11th Cir. 2010).  In the case of warrants and their resultant arrests, "'issuance of the warrant will not shield an officer when the warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," nor will it shield an officer when the underlying affidavit includes deliberate and reckless misstatements and omissions.'" *Druge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1187 (M.D. Fla. 2008) (quoting *Miller v. Prince George's Cnty*, 475 F.3d 621, 632 (4th Cir. 2007), quoting in turn *Malley v.*

*Briggs*, 475 U.S. 335, 345 (1986)).  *Accord Zozula v. Florida*, No. 6:10-cv-1588-Orl-28GJK, 2011 WL 2531203 at *3 (M.D. Fla. June 24, 2011) ("To succeed on a claim that an arrest 'was unreasonable because it followed from an affidavit that was deficient because it was dishonest,' a plaintiff must prove that the affiant - in this case Campbell - 'deliberately or with a "reckless disregard for the truth" made material false statements in his affidavit or omitted from that affidavit "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" (citations omitted)).  This is the exception to the general rule that issuance of a warrant "breaks the chain of causation for false arrest, insulating the initiating party."  *Id.* (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)).  The allegations of the complaint fall short of demonstrating that Campbell included evidence that he fabricated himself or, more importantly, had knowledge that what he relayed to the judge was false.[19]

---

[19]  Even assuming *arguendo* that Campbell knew certain statements in his affidavit were false, "in order for an officer to be held liable ... it must be shown that 'such false statements were necessary to the probable cause [finding].'" *Horton v. Williams*, 572 F. Supp. 2d 1292, 1302 (M.D. Ala. 2008) (quoting *Jones v. Cannon*, 174, F.3d 1271, 1285 (11th Cir. 1999)).  The complaint falls short of such a showing in that it fails to even indicate which facts in the affidavit allegedly were "fabricated," much less to establish that they were critical to the probable cause determination required for the warrant to issue.  Mr. Pittman's complaint fails to illuminate even this most basic question.  He provides no evidence that Campbell knew anything was false.  Even if it is assumed that some statement was in fact false, the complaint does not suggest what was false and why that statement was necessary to a finding of probable cause by the magistrate judge.  Accordingly, the complaint fails to present facts necessary for a plausible theory of recovery.

This issue was first addressed in the context of evidentiary hearings and the exclusionary rule in *Franks v. Delaware*. 438 U.S. 154 (1978). There, the Supreme Court found that there is "a presumption of validity with respect to the affidavit supporting the search warrant. *Id.* at 171. The Court then went on to explain the necessary steps and proof requirements to warrant an evidentiary hearing on the validity of an affidavit underlying a warrant. *Id.*

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171-72. Plaintiff has not come close to making the required showing to attack Campbell's affidavit. He has not pointed out the specific portions of the affidavit that he claims to be false, but only describes the affidavit in general terms and attaches it in its entirety as an exhibit to the complaint. He has not demonstrated the "deliberate

falsity or reckless disregard" of Campbell except by the use of inadmissible character evidence and by alleging an association with Spence.  However, consideration of such evidence is expressly forbidden by *Franks* as it is not the truthfulness of the nongovernmental informant that may come under fire in the inquiry and Plaintiff may subvert this rule by first impugning the nongovernmental informant and then alleging in a conclusory fashion an association with the affiant.  Additionally, Plaintiff's required offer of proof - in this case, the exhibits to the complaint - are oftentimes contradictory, based upon multiple layers of hearsay, and do not demonstrate any deliberate falsehood by Campbell.

Pittman's argument in his brief in opposition to the motion to dismiss fare no better.  There, he attempts to reframe the question to instead ask whether the allegations of the complaint, if found to be true, would violate clearly established law. (Doc. 74 at pp. 9-13).  This approach is irreparably flawed because it assumes the veracity of his legal claims and conclusions of law.  Neither assertion can be taken as true for the purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 663 ("the tenet that a court must  accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  For example, Plaintiff repeatedly assumes a conspiracy between Campbell and various other Defendants (Doc. 74 at pp. 9-13), yet his complaint establishes a conspiracy only by a conclusory statement that one existed

(Doc. 33 at ¶¶ 69, 277-279).  It is true that he supports this claim by an assertion of an "illicit sexual relationship" between Defendants Campbell and Spence.  (*See*, *e.g.*, Doc. 74 at p.9).  However, a relationship does not create an inference of conspiracy as required to meet the pleading standard of Rule 8.  *Twombly*, 550 U.S. at 554 (allegations "must include evidence tending to *exclude* the possibility of [legal] action." (emphasis added)).

Plaintiff also asserts that Defendant Campbell was "corruptly involved with Spence and that Spence fabricated the 'evidence' which Campbell used in support of his arrest warrant."  (Doc. 74 at p.11) But this argument fails for the same reason that the "illicit sexual relationship" in and of itself does not support his claim: it lacks a showing that Campbell knew that Spence fabricated the evidence that he used.[20] Without a showing that Campbell knew he was including false information in his affidavit, there is no lack of probable cause and, consequently, no showing of lack of good faith.  Based on the information he was given, his conduct was objectively reasonable.

Additionally, it is worth noting that Plaintiff repeatedly refers to Campbell's

---

[20] Plaintiff does allege that Campbell knew that Spence professed involvement in the crime (Doc. 33 at ¶ 197), but the complaint gives no indication of whether he allegedly knew at the time of writing the affidavit.  Instead, Plaintiff relies only on a conclusory allegation that Campbell was aware of her involvement to create the inference that he knew the evidence supporting his affidavit was fabricated.  Arguable probable cause must be evaluated based on Campbell's knowledge at the time of writing the affidavit.  *Gold*, 121 F.3d at 1445.

involvement in the alternative: "Pittman alleges that Campbell and Spence, either in concert with State Farm together *or separately*..." (Doc. 74 at p. 9); "either (1) Spence or State Farm shared her role with Campbell in the burglary or (2) *Spence and State Farm actively concealed her role in the burglary to gain Campbell's trust.*" (*Id.* at pp. 13-14).   These inconsistencies litter the complaint.   And, while pleading in the alternative is allowed, Fed. R. Civ. P. 8(d)(2), Plaintiff's alternatives in these instances demonstrate that he cannot show and has not sufficiently alleged that a conspiracy did in fact exist.   He has averred the very real possibility that the Defendants acted independently.   As long as such a possibility exists even reading the pleadings in the light most favorable to the Plaintiff, he cannot demonstrate that the Defendants conspired.   Because he cannot demonstrate conspiracy, he cannot show that Campbell was not acting with arguable probable cause[21] because he cannot demonstrate that Campbell knew the information in his affidavit was false and his complaint against Defendant Campbell is due to be dismissed.

## C.    Malicious Prosecution under § 1983

"Our court has identified malicious prosecution as a violation of the Fourth

---

[21]  For the same reason, Plaintiff cannot show that the other Defendants were acting under color of state law, which defeats his § 1983 claims against them, as discussed in more detail *infra*.

Amendment and a viable constitutional tort cognizable under § 1983.[22]  *Wood v.*

*Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)

> To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (internal

citations and quotation marks omitted).  *Accord Jones v. Ward*, 514 F.App'x 843, 847

(11th Cir. 2013).

Plaintiff's claim for malicious prosecution fails for a readily discernable

reason: the prior prosecution was not terminated in his favor.[23]  (Doc. 33-58).  The

motion to dismiss that case reflects that "[t]he State of Alabama and the Defendant

agree[d]" to dismiss the case.  (*Id.*)  A dismissal "pursuant to a compromise or

agreement does not constitute favorable termination and, thus, cannot support a claim

for malicious prosecution."  *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998)

---

[22]  The complaint does not specify whether Plaintiff brings his malicious prosecution claim under § 1983 or under state law.  To the extent that the claim falls under state law, it will be discussed separately.

[23]  Furthermore, Plaintiff asserts that "[t]he State Court criminal proceeding remains open...." (Doc. 65 at p. 13).

(citations omitted). *Accord Harris v. Wal-Mart Stores East, LP*, No. 1:11-CV-03406-CC, 2013 WL 6795973 at *6 (N.D. Ga. Dec. 23, 2013) ("Similarly, when the state dismisses a case because of an agreement and compromise between the parties, the prosecution has not terminated in favor of the party pursuing a malicious prosecution claim."); *Byrd v. City of Daphne*, No. CA 11-0468-CG-C, 2012 WL 1036058 at *9 (S.D. Ala. March 9, 2012) (dismissal warranted when it is "not at all clear... that the dismissal of charges was not the result of a compromise or agreement...."), *McDaniel v. Yearwood*, No. 2:11-CV-00165-RWS, 2012 WL 526078 at *14 (N.D. Ga. Feb. 16, 2012) (same); *Libman v. City of Avondale Estates*, No. Civ. A. 1:04CV2294TWT, 2006 WL 559237 at *9 (N.D. Ga. March 3, 2006) (same). Without looking to any additional elements of the claim, Plaintiff's malicious prosecution claim clearly fails and is due to be dismissed.

###    D.    Res Judicata

The Lawyer Defendants, State Farm, and Pat Craig also assert the defense of res judicata.

> The party asserting claim preclusion as a defense must establish four elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.

*Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013), *cert. denied* 134

S. Ct. 61 (2013) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001)).  The parties make arguments on several of these elements.  (Co. 55 at pp. 26-30, Doc. 62 at pp. 23-24).  However, the fourth element readily defeats assertion of *res judicata*.

Plaintiff and State Farm have previously litigated against each other over Plaintiff's claim for the missing items.  (Doc. 33 at ¶ 38).  The original case was dismissed on summary judgement by District Judge Mark E. Fuller on June 21, 2012. *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335 (M.D. Ala. 2012) ("*Pittman I*").  Judge Fuller's decision was affirmed on appeal to the Eleventh Circuit on May 20, 2013.  *Pittman v. State Farm Fire & Cas. Co.*, 519 F.App'x 656 (11th Cir. 2013) ("*Pittman II*").  This prior civil case between State Farm and Plaintiff involved only claims of breach of contract and bad faith.  *Pittman I*, 868 F. Supp. 2d 1335, *aff'd* 519 F.App'x 656.  (Doc. 33 at ¶ 38, Doc. 55 at p. 26, Doc. 62 at p. 24). It did not involve claims of constitutional violations, malicious prosecution, or defamation as are now before the undersigned.  (Doc. 33 at ¶¶ 263-304).  Merely looking at these claims demonstrates that they vary greatly, but that is not enough. Cases involve the same cause of action when a subsequent case "arises out of the same nucleus of operative fact, or is based upon the same factual predicate." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999) (quoting

*Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)).

Thus, even when the exact claims are not realleged, *res judicata* may still act as a bar

to a subsequent action if the claims alleged therein arise from the "same nucleus of

operative facts." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir.

1998) (citations omitted).  To determine whether *res judicata* applies, a court "must

examine the factual issues that must be resolved in the second suit and compare them

with the issues explored in the first suit." *Id.*  Because of this emphasis on the

underlying facts, it is not only the claims actually raised that are barred, but also any

that *could* have been raised in the previous litigation. *Id.  Accord In re Piper Aircraft

Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).

In the instant case, the claims do not arise out of the "same nucleus of operative

facts."  While some of the background facts - the robbery and investigation - are

common to both cases, the claims in this action go much further.  For example, some

of the actions complained of did not occur until the previous case was on appeal.

(Doc. 33 at ¶ 151).  Moreover, the malicious prosecution claim in its entirety could

not possibly accrue until the criminal prosecution of Plaintiff was dismissed - an

event that occurred after the original case was decided and affirmed on appeal.[24]  (*Id.*

---

[24]  The criminal prosecution against Plaintiff was dismissed in March of 2014, well after the civil case he brought against State Farm was decided in June of 2012 and even after the appeal was decided in May of 2013.

at ¶ 243, Doc. 33-58, Doc. 33-59).   Therefore, without more, it is clear that *res judicata* does not bar the instant action.

### E.   State Law Claims and Statutory Immunity.

Having decided that all federal claims in this case are due to be dismissed, it is unnecessary to reach the merits of the state law claims.   Both defamation and malicious prosecution, to the extent Plaintiff intended to bring that claim under state law rather than § 1983, can be adequately and more appropriately decided by the state courts without federal interference.   Similarly, the applicability of Defendants' assertion of statutory immunity under Ala. Code § 27-12A-22 would be better decided in the state courts.   Absent the constitutional claims, supplemental jurisdiction no longer exists and it would be improper for this court to hazard a guess on a legal question more appropriately left to the state courts.

## V.   CONCLUSION

Accordingly, for the reasons stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendants' motions to dismiss (Docs. 55, 60, 62) be **GRANTED** as further set out below.

Defendant Eugene Campbell's motion to dismiss (Doc. 60) is due to be **GRANTED**.

Defendants State Farm and Pat Craig's motion to dismiss (Doc. 55) and the

Lawyer Defendants' motion to dismiss (Doc. 62) are due to be **GRANTED** as follows: the § 1983 claims (Counts I and II) and the malicious prosecution claim (Count III) to the extent it is a § 1983 malicious prosecution claim are due to be **DISMISSED**. The remaining state law claims are due to be **DISMISSED WITHOUT PREJUDICE** and with leave to refile in state court.

Finally, it is **ORDERED** that the parties shall file any objections to this recommendation on or before **April 27, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).

**DONE** and **ORDERED** this 13th day of April, 2015.

/s/ Paul W. Greene
United States Magistrate Judge